UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
EQUAL EMPLOYMENT OPPORTUNITY :
COMMISSION, :
 :
                Plaintiff, :
 : Civil Action No. 10-1749 (FB)(RML)
  -v- :
 :
NORTH SHORE LONG ISLAND JEWISH :
HEALTH SYSTEM and :
LONG ISLAND JEWISH MEDICAL CENTER, :
 :
                Defendants. :
-----------------------------------------------------------x

## CONSENT DECREE

This cause of action was initiated on April 20, 2010, by the Equal Employment Opportunity Commission ("EEOC"), an agency of the United States Government, alleging that Defendants North Shore Long Island Jewish Health System, Inc. and Long Island Jewish Medical Center, engaged in discrimination against Hispanic employees in regard to their terms, conditions or privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, by implementing an English-only/No-Spanish Rule. EEOC brought this action on behalf of Charging Party Melissa Pena and two additional Hispanic employees employed in Defendants' Central Accessioning Laboratory (also referred to as "Lab Clinical").

EEOC alleged that from at least November 2007 Defendants engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e. These practices include, but are not limited to, the following:

    a)     In November 2007, Defendants' Administrative Director, Joyce Ann Musel-Winn, instructed Charging Party not to speak Spanish and that "only English is to be spoken in the lab as per hospital policy." Defendants first singled out Ms. Pena and instructed her not to speak in

               Spanish when Ms. Pena was responding to a messenger who was speaking to her in Spanish in the course of her employment duties.

b)    About one week later, Ms. Musel-Winn again approached Ms. Pena in the presence of the other Hispanic employees and stated that "pursuant to the President of the Hospital, only English is to be spoken in the lab."

c)    Ms. Pena attempted to obtain clarification regarding any such restrictive language policy from various sources including Ms. Musel-Winn herself, from her direct supervisor, Claudia Bailey, from other higher up officials at the Hospital, and from her union, but at that time received no clear guidance as to any such official language policy.

d)    Consequently, in December 2007, Ms. Pena was unfairly forced to decide between assisting the frantic mother of a Spanish-speaking patient on the telephone and risk violating Defendants' restrictive language rule; she ultimately assisted the patient, but felt much anxiety as a result of Defendants' restrictive language practices.

e)    On or about July 15, 2008, Ms. Bailey held a meeting and informed the Central Accessioning Laboratory employees that English was the only language to be spoken while in the Lab and in the break room. These instructions are contained on Ms. Bailey's July 2008 meeting agenda and this document was disseminated to the employees in this Lab.

f)    Defendants routinely permitted non-Hispanic employees to speak in their native languages in their various laboratories and other areas of the Hospital. Specifically Defendants allowed Russian and South Asian employees to speak in their native languages, while Ms. Pena and other Hispanic employees were not permitted to speak Spanish.

g)    Defendants' enforcement of the English-only/No-Spanish Rule resulted in disparate treatment of Hispanic employees in the Central Accessioning Laboratory.

h)    Defendants' English-only/No-Spanish Rule is not justified by business necessity and has an adverse impact on Hispanic employees.

EEOC and Defendants agree that it is in their mutual interest to fully resolve the matter without further litigation. Defendants deny all allegations of discrimination in this matter.

EEOC and Defendants hereby stipulate and consent to the entry of this Decree as final and binding between the parties signatory hereto and their assigns or successors.

This Decree resolves all matters raised in the EEOC Complaint filed herein. The Decree in no way affects EEOC's rights to process any future charges that may be filed against Defendants, and to commence civil actions on any such charges.

The parties have agreed that this Decree may be entered without Findings of Fact and Conclusions of Law having been made and entered by the Court.

In consideration of the mutual promises of each party to this Decree, the sufficiency of which is hereby acknowledged, it is agreed and IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1. This Decree resolves all of the issues raised by the EEOC Complaint and EEOC Charge No. 520-2008-01209 brought by Melissa Pena.

2. The parties agree that the federal court has jurisdiction to enforce this Decree. The parties agree that they will not contest jurisdiction to enforce this Decree on any grounds, including subject matter jurisdiction, venue, or failing to meet administrative prerequisites. Any party may bring an enforcement suit upon breach of any of the terms of this Decree by any other party. Nothing in this Decree shall be construed to preclude EEOC from bringing proceedings to enforce this Decree in the event that Defendants fail to perform any of the respective promises and representations contained herein.

3. Defendants are enjoined from implementing any "English-Only"/ "No Spanish" policies.

4. Defendants are enjoined from retaliating against any individual who has opposed restrictive language policies, or participated in this matter in any regard.

5. Defendants shall pay $18,000 total in compensatory damages to individuals affected by Defendants' conduct. Defendants shall issue the following checks within 5 days of the entry of this Decree: Melissa Pena ($15,000), Frank Silva ($1,500), and Javier Candelaria ($1,500). Defendants shall overnight mail these checks to these three individuals at addresses provided by EEOC. Defendants will simultaneously provide these three individuals with 1099

tax forms. Defendants shall email copies of the three checks and accompanying tax documents to EEOC (to sunu.chandy@eeoc.gov) within 2 days of payment.

6. Within 7 days of the entry of this Decree, Defendants will formally rescind their document dated July 2008 which contains restrictive language guidelines, and distribute the clarification memorandum attached as Exhibit A to all their employees in all laboratories directly or indirectly supervised by Administrative Director Joyce Ann Musel-Winn. This includes employees in the following subset of the Hospital Laboratories: Lab Administration, Lab Hematology, Lab Immuno-Flow Cytometry, Lab Clinical (Central Accessioning Laboratory), Lab Cell Genetics, Lab Microbiology, Lab Blood Bank, Lab Serology-Immunology, Lab Toxicology (hereinafter "relevant laboratory employees"). Defendants shall provide written confirmation that Exhibit A has been disseminated to all relevant laboratory employees by emailing such notification to EEOC (to sunu.chandy@eeoc.gov) within 10 days of entry of this Decree. Defendants shall also post a copy of Exhibit A in all break rooms utilized by the relevant laboratory employees.

7. Within 7 days of the entry of this Decree, Defendants will also post the "Notice to Employees" in areas utilized by the relevant laboratory employees including on the bulletin board in the main passage that connects the Administrative Director's and other management offices, testing locations, the employee's locker room/storage area and the lab workstations. See Notice attached as Exhibit B.

8. Within 7 days of the entry of this Decree, Defendants will implement revised Equal Employment and Non-Discrimination Policies and Complaint Procedures ("Policy"). This Policy is attached as Exhibit C and shall be disseminated to all relevant laboratory employees within 7 days of entry of the Decree. Defendants shall provide written confirmation that Exhibit

4

C has been disseminated to all relevant laboratory employees by emailing such notification to EEOC (to sunu.chandy@eeoc.gov) within 10 days of the entry of this Decree. The Policy shall also be distributed to all of Defendants' new employees within 3 days of hire and documentation of such distribution shall be retained by Defendants. Within 5 days of the entry of this Decree, Defendants shall post the Policy on their website.

9. Within 30 days of the entry of the Decree, Defendants will provide 3 hours of equal employment opportunity training for all relevant laboratory employees to include reviewing Exhibits A and C and clarifying that Defendants does not maintain any restrictive language policies. Defendants shall provide written confirmation of the completion of these training sessions within 5 days of the completion of the training sessions along with copies of signed attendance sheets of the training sessions to EEOC (email to sunu.chandy@eeoc.gov).

10. Within 30 days of the entry of the Decree, Defendants will provide an additional 3 hours of equal employment and anti-discrimination management training including for Administrative Director Joyce Ann Musel-Winn and Central Accession Laboratory Supervisor Claudia Bailey. Defendants shall provide written confirmation of the completion of these training sessions within 5 days of the completion of the training to EEOC (email to sunu.chandy@eeoc.gov).

11. The above-referenced training will be provided by Defendants' Office of Legal Affairs.

12. Defendants will report to EEOC in writing about any employee or applicant complaints regarding national origin discrimination or language restrictions at the Hospital within 7 days after any such complaint is made. This includes formal or informal complaints, administrative charges, and lawsuits. For every complaint, whether oral or written, Defendants

shall provide the name of the complainant and a detailed explanation of Defendants' actions taken in response to the complaint. Defendants shall also provide updates to the report every 30 days until the final resolution of the complaint. Defendants shall email reports to EEOC (email to sunu.chandy@eeoc.gov).

13. EEOC may monitor compliance by inspection of Defendants' premises and records, and by interviewing their employees. Defendants will make available any facility for inspection and make available for inspection and copying any records or witnesses.

14. The parties shall bear their own attorneys fees and costs incurred in this action.

15. This Decree constitutes the complete understanding among the parties to this Decree. No other promises or agreement shall be binding unless agreed to in writing and signed by these parties.

16. This Decree will remain in effect for 3 years from the date of entry.

Dated: April 21, 2010

**FOR PLAINTIFF US EEOC**

_____
Elizabeth Grossman, Regional Attorney

_____
Robert D. Rose, Supervisory Trial Attorney

_____
Sunu P. Chandy, Senior Trial Attorney
33 Whitehall Street, 5th Floor
New York, New York 10004
Telephone No. 212-336-3706
Facsimile No. 212-336-3623
Email Address: sunu.chandy@eeoc.gov

6

**FOR DEFENDANTS NORTH SHORE - LONG ISLAND JEWISH HEALTH SYSTEM AND LONG ISLAND JEWISH MEDICAL CENTER**

Dated: April 16, 2010

_____
Mark Gloade
Senior Associate General Counsel
Office of Legal Affairs
145 Community Drive
Great Neck, New York 11021
Telephone No.: 516-465-8091
Facsimile No.: 516-465-8105
Email: mgloade@nshs.edu

**SO ORDERED, ADJUDGED, AND DECREED,**
Signed this ____ day of _____, 2010

_____
Frederic Block, Senior-judge, United States District Court Judge



**Long Island Jewish Medical Center**

North Shore-Long Island Jewish Health System

**EXHIBIT A**

This memorandum is being issued pursuant to a Consent Decree entered in resolution of a lawsuit brought by the U.S. Equal Employment Opportunity Commission ("EEOC") against North Shore-Long Island Jewish Health System, Inc. and Long Island Jewish Medical Center (the "Hospital").

The Hospital is committed to maintaining a diverse workplace and one that is free of all forms of discrimination.

This memorandum specifically serves to inform employees that the Hospital does not allow any restrictive language policies or practices in our facilities. Any written or oral instructions to the contrary previously provided to our employees are hereby officially rescinded.

Employees are free to speak in their native languages. Additionally, the use of such language skills, particularly to aid in patient care and the overall needs of the workplace, is specifically welcome and appreciated. The Hospital will not discriminate against some groups of employees for speaking in their native languages while allowing employees from other backgrounds to speak their languages.

The Hospital acknowledges that individuals from many diverse cultures and national origins are represented in our workplace and commits to fostering an atmosphere of respect and appreciation for people from all different backgrounds.

Employees are also reminded, as always, to treat each other and all patients with respect and courtesy in all of their communications.

If you have any questions concerning this memorandum or any issues relating to discrimination in the workplace, please contact Gloria Cohen, RN, M.P.S., Associate Executive Director, at 516-470-6407 or Vicki Kahaner, Esq., Corporate Director, Employee & Labor Relations, at 516-734-7024.

SIGNATURE:

Chantal Weinhold, Executive Director:

*[signature]*

Date: 4/19/10

6649 v.1



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Intake Information Group: (800) 669-4000

**EXHIBIT B**

## NOTICE TO EMPLOYEES

This notice is being posted pursuant to a Consent Decree entered in resolution of a lawsuit brought by the U.S. Equal Employment Opportunity Commission ("EEOC") against North Shore Long Island Jewish Health System, Inc. and Long Island Jewish Medical Center ("The Hospital"). EEOC alleged that the Hospital discriminated against Hispanic employees in violation of Title VII of the Civil Rights Act of 1964, as amended, by implementing an English-only/No-Spanish Rule.

Federal law prohibits employers from discriminating against applicants and employees based on national origin, religion, race, color, sex, age, disability or genetic code. The Hospital will comply with all laws prohibiting discrimination in the workplace and prohibit any manager, employee, officer or agent from discriminating against any individual on any prohibited basis under federal employment discrimination law. The Hospital will not retaliate against any individual who asserts his or her rights under these laws or who participated in any manner in this case.

The Hospital will distribute a revised Equal Employment and Non-Discrimination Policy and a clarification memorandum confirming that the Hospital does not maintain any restrictive language policies or practices. The memorandum will also affirm the Hospital's appreciation for the diverse languages represented in the workplace. The Hospital will also conduct anti-discrimination training for managers and other employees regarding their rights and responsibilities concerning these policies.

If you have a complaint of discrimination or harassment or retaliation, you may report it to Gloria Cohen, R.N., M.P.S., Associate Executive Director, Human Resources at 516-470-6407 or Vicki Kahaner, Esq., Corporate Director, Employee and Labor Relations at 516-732-7024.

You may also choose to contact EEOC at the number below and/or review information on its website.

## Equal Employment Opportunity Commission
## 800-669-4000 * www.eeoc.gov

**THIS IS AN OFFICIAL NOTICE AND SHALL NOT BE DEFACED BY ANYONE**

This notice must remain posted for three years from the date of posting, until _____, 2013.

Signed: _____
Chantal Weinhold, Executive Director

EXHIBIT C
# North Shore LIJ Health System

| Policy Title: | Part: | VI | Revised: |
|---|---|---|---|
| **Non-Discrimination and Non-Harassment** | Section: | 6 | 11/01/06<br>12/17/08<br>01/04/10 |
| Category: | Effective Date: | 1999 | |
| **Legal/Regulations** | Page: | 1 of 3 | |

## Policy

The North Shore-LIJ Health System (NSLIJHS) is committed to maintaining a work environment that is free from unlawful discrimination and harassment. In keeping with this commitment, the health system will not tolerate unlawful discrimination or harassment against its employees by anyone, including any supervisor, co-worker, patient or vendor where such discrimination or harassment is based on employees' age, race, creed/religion, color, national origin, alienage or citizenship status, sexual orientation, military or veteran status, sex/gender, disability, genetic predisposition or carrier status, marital status, partnership status, and victim of domestic violence, or any other protected status.

Additionally, the health system does not tolerate retaliation against any employee for making a complaint about or opposing discrimination or harassment or for cooperating, assisting or participating in an investigation of a discrimination.

## Purpose

The purpose of this policy is to ensure that individuals covered by this policy are provided with equal employment opportunities and a workplace that is free from all forms of prohibited discrimination and harassment in compliance with applicable laws and regulations regarding non-discrimination and non-harassment.

## Scope

This policy applies to all NSLIJHS employees and job applicants, vendors, agency staff, volunteers and outside contractors.

## Definitions

1. The term "discrimination", as used in this policy, refers to the different treatment of an employee, in any aspect of employment, because of the employee's age, race, creed/religion, color, national origin, alienage or citizenship status, sexual orientation, military or veteran status, sex/gender, disability, genetic predisposition or carrier status, marital status, partnership status, and victim of domestic violence, or any other protected status. The range of employment practices where discrimination is prohibited includes, but is not limited to: (i) hiring and firing; (ii) compensation, assignment, or classification of employees; (iii) transfer, promotion, layoff or recall; (iv) job advertisements; (v) recruitment; (vi) testing; (vii) use of health system facilities; (viii) training and apprenticeship programs; (ix) fringe benefits; (x) pay, retirement plans and disability leave; and (xi) any other term and condition of employment.

2. Harassment consists of unwelcome conduct, whether verbal, physical or otherwise, that is based upon a person's age, race, creed/religion, color, national origin, alienage or citizenship status, sexual orientation, military or veteran status, sex/gender, disability, genetic predisposition or carrier status, marital status, partnership status, and victim of domestic violence, or any other protected status. The health system will not tolerate discrimination or harassing conduct that affects employment or benefits, that interferes with an individual's work performance, or that creates an intimidating, hostile, or offensive work environment.

Unwelcome sexual advances, requests for sexual favors, and other physical, verbal or other conduct based on sex constitute sexual harassment when:

- Submission to the conduct is an explicit or implicit term or condition of employment,
- Submission to or rejection of the conduct is used as the basis for an employment decision, or
- The conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment.

Sexual harassment may include persisting in unwelcome sexual propositions, sexual innuendo, suggestive comments, sexually-oriented "kidding" or "teasing," "practical jokes," jokes about gender-specific traits, foul or obscene language or gestures, display of foul or obscene printed or visual material, and physical contact such as patting, pinching, or brushing against another's body.

Due to the different function and nature of the health system's Employee Assistance Program, complaints of harassment made to that program cannot be investigated pursuant to this policy.

**Procedures**

1. Communication:
   - Copies of the health system's non-discrimination and non-harassment policy shall be posted by Site Human Resources (HR) in a conspicuous place so that all employees may become aware of the policy.
   - Copies of the health system's policy statement shall also be distributed and discussed during health system orientation for new employees and included in the Employee Handbook that is distributed to all new employees.

2. Training:
   - Periodic training regarding the health system's policy may be scheduled by Site HR. Such training shall be coordinated with the Corporate HR—Labor and Employee Relations Department.

# North Shore-LIJ Health System

## VI – 6 Non-Discrimination and Non-Harassment        Page 3 of 3

3. Complaint and Investigation:

   - It is everyone's responsibility to ensure that discrimination and harassment are avoided. If you feel that you have experienced or witnessed discrimination or harassment, you are strongly urged to immediately notify Site HR. If you are uncomfortable relating such a complaint to Site HR or if you are not satisfied with the response, you may report the discrimination or harassment to the Vice President- HR.
   - Any complaints (whether made formally or informally) must be investigated by Site HR/designee with or without sanction from the complainant.
   - The health system forbids retaliation against anyone for reporting discrimination or harassment, assisting in making a discrimination or harassment complaint, or cooperating in an investigation of alleged discrimination or harassment.
   - All complaints are taken seriously and are investigated thoroughly and promptly. Except as may be necessary to adequately investigate and address such complaints, the health system will seek to keep complaints and the terms of their resolution confidential.
   - If you do not know the number of your Site Human Resources Department, please call the Human Resources Service Center at (516) 734-7000.

4. Corrective Action:

   - If the investigation substantiates the complaint, then the health system will take all appropriate steps to end the harassment, up to and including termination of employment of the individual found to have engaged in behavior violating this policy.
   - As may be appropriate in the circumstances, the health system will assess whether the corrective action has stopped the harassment or discrimination and whether the complainant has been subject to retaliation.

## Related Policies

    Part VI-3      Compliance with Disability Laws
    Part VI-5      Equal Employment Opportunity/Affirmative Action
    Part XIII-9    Violence in the Workplace

## North Shore-LIJ Health System

| Policy Title: | Part: | VI | Revised: |
|---|---|---|---|
| Equal Employment Opportunity/ Affirmative Action | Section: | 5 | 03/21/06<br>12/03/07<br>07/11/08<br>12/17/08<br>12/11/09 |
| Category: | Effective Date: | 1999 | |
| Legal/Regulations | Page: | 1 of 1 | |

### Policy

It is the policy of the North Shore-LIJ Health System (NSLIJHS) to provide equal employment opportunity and treat all employees equally regardless of age, race, creed/religion, color, national origin, alienage or citizenship status, sexual orientation, military or veteran status, sex/gender, disability, genetic information or genetic predisposition or carrier status, marital status, partnership status, victim of domestic violence, or any other protected status.

Personnel policies and employment practices including, but not limited to, those relating to: (i) hiring and firing; (ii) compensation, assignment, or classification of employees; (iii) transfer, promotion, layoff or recall; (iv) job advertisements; (v) recruitment; (vi) testing; (vii) use of health system facilities; (viii) training and apprenticeship programs; (ix) fringe benefits; (x) pay, retirement plans and disability leave; and (xi) any other term and condition of employment, will be administered consistent with equal employment principles and applicable affirmative action requirements.

### Purpose

The purpose of this policy is to describe NSLIJHS's commitment to comply with federal, state and local laws and regulations governing equal employment opportunity and affirmative action requirements.

### Scope

This policy applies to all NSLIJHS applicants, employees, volunteers, students and medical staff.

### Procedures

1. All managers, supervisors and employees are required to apply this policy in day-to-day programs and employment decisions.

2. Corporate Human Resources, Site Human Resources and Administration will ensure adherence to the health system's mission and responsibilities.

### Related Policies

Part VI-6  Non-Discrimination and Non-Harassment
Part IX-9  Recruitment and Hiring

## North Shore-LIJ Health System

| Policy Title: | Part: | VI | Revised: |
|---|---|---|---|
| **Compliance With Disability Laws** | Section: | 3 | 11/01/06 |
| Category: | Effective Date: | 1999 | 12/03/07 01/04/10 |
| **Legal/Regulations** | Page: | 1 of 4 | |

### Policy

It is the policy of the North Shore-LIJ Health System (NSLIJHS) to comply with all applicable federal, state and local discrimination laws, including those protecting the rights of individuals with disabilities. It is also the health system's policy to ensure that qualified individuals with a disability are not discriminated against on the basis of their disability with respect to job application, hiring, advancement, compensation, job training and other terms, conditions and privileges of employment.

A qualified individual with a disability may request a reasonable accommodation to help him/her perform the essential functions of his/her position. NSLIJHS will accommodate a request for a reasonable accommodation unless the proposed accommodation would impose an undue hardship.

The determination of whether a person is a "qualified individual," or has a "disability" (or analogous statutory term, such as "handicap, as defined by federal, state or local laws, hereafter referred to as "disability") will be made on a case-by-case basis. Likewise, requests for reasonable accommodation by individuals who have a disability as defined by applicable law will be evaluated on a case-by-case basis, taking into account, among other things, the nature and extent of the individual's disability and the ability of the individual to perform the essential functions of his or her job, with or without a reasonable accommodation. The requested accommodation will be evaluated in the context of the individual's needs, the effectiveness of the proposed accommodation, any other accommodations that may be appropriate, and whether the accommodation will impose an undue hardship on the health system.

All confidential medical information provided by an employee in connection with a request for a reasonable accommodation should be given to the employee's designated Site Human Resources ("Site HR") representative. Employees who have access to such confidential medical information should not disclose the medical information to anyone else at NSLIJHS except, as necessary, to Employee Benefits in connection with a claim for benefits or in connection with reviewing possible accommodations for the employee.

A prospective or current employee who requests an accommodation on the basis of a disability may be required to provide certain medical information. The requested medical information will be limited to determining the existence of a qualifying disability and the functional limitations that require a reasonable accommodation. The medical documentation will be sufficient if it (1) describes the nature, severity, and duration of the individual's impairment, the activity or activities that the impairment limits, and the extent to which the impairment limits the employee's ability to perform the activity or activities; and, (2) substantiates why the requested reasonable accommodation is needed. If the documentation provided is not sufficient, the individual may be required to undergo a medical evaluation by a qualified physician limited to determining the existence of a qualifying disability and the functional limitations that require a reasonable accommodation.

# North Shore-LIJ Health System

## VI – 3 Compliance With Disability Laws          Page 2 of 4

The information derived from this exam will be used solely to determine what, if any, accommodations are necessary and appropriate. All medical information will be treated as confidential and will be maintained in a separate medical file.

A medical examination and/or review of an employee's fitness for duty may also be initiated to determine whether an individual can safely perform the essential functions of his or her job without posing a direct threat (i.e., by creating a significant risk). The health system is not required to employ, or continue to employ, any person who cannot safely perform the essential functions of his or her job without posing a direct threat. The determination that an individual poses a direct threat shall be based on an individualized assessment of his/her present ability to safely perform his/her essential job functions.

All medical information provided by a prospective or current employee in connection with a request for a reasonable accommodation and all medical information obtained through a medical examination will be treated as confidential, maintained in a separate file, and will not be disclosed except that (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations; (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and (iii) government officials will be informed as required by law.

### Purpose

The purpose of this policy is to comply with all applicable federal, state and local laws that prohibit discrimination against individuals with disabilities and to ensure that qualified individuals with a disability are not discriminated against on the basis of their disability with respect to job application, hiring, advancement, compensation, job training and other terms, conditions and privileges of employment.

### Scope

This policy applies to all NSLIJHS applicants, employees, medical staff and students.

### Procedures

1. If an employee believes that he/she requires a reasonable accommodation to perform the essential functions of his/her position, the employee should make a written request to Site HR detailing the nature of the accommodation requested and the reason such an accommodation is needed. If an employee makes a verbal or written request for an accommodation to any person other than a Site HR representative, that person shall not inquire further, but shall direct the employee to Site HR. Site HR shall then coordinate the collection of information, including medical documentation consistent with this policy and federal and state laws from the employee or his/her physician, necessary to evaluate the request. Site HR will also advise the employee that the health system will maintain the confidentiality of any medical information provided in connection with the request.

# North Shore-LIJ Health System

## VI – 3 Compliance With Disability Laws                                        Page 3 of 4

2. Site HR will evaluate this information in consultation with the department head, the Employee Health Service (EHS) health professional, and, if required, the Vice President-HR. This evaluation will include an examination of the position's essential functions.

3. The employee may be required to provide documentation sufficient to substantiate that he or she has a qualifying disability and needs the reasonable accommodation requested. No further medical information may be requested or required. The documentation is sufficient if it (1) describes the nature, severity, and duration of the individual's impairment, the activity or activities that the impairment limits, and the extent to which the impairment limits the individual's ability to perform the activity or activities; and (2) substantiates why the requested reasonable accommodation is needed.

4. The EHS physician shall be consulted when questions arise regarding the nature, extent or impact of a medical condition/disability. If it is determined that information provided by the individual is not sufficient to substantiate that he or she has a qualifying disability and needs a reasonable accommodation, the individual should be told why the documentation is insufficient and allowed an opportunity to provide the missing information in a timely manner. Only if sufficient documentation is not provided may the employee be required to undergo a medical evaluation by a physician designated by the health system. Such evaluations should be initiated only after a discussion has been held and agreement reached, with Site HR. To facilitate this evaluation, all medical information obtained from the employee as well as appropriate job-related information should be provided to the physician conducting the evaluation. This medical examination must be limited to determining the existence of a qualifying disability and the functional limitations that require reasonable accommodation.

5. The final employment determination (i.e., to hire/not hire, to provide an accommodation and/or to allow a current employee to return from a medical leave of absence with some limitation) shall be made by Site HR and, if required, the Vice President-HR in consultation with the department head.

6. All medical information provided by a prospective or current employee in connection with a request for a reasonable accommodation and all medical information obtained through a medical examination must be treated as confidential, maintained in a separate file, and not be disclosed except that (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations; (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and (iii) government officials will be informed as required by law.

# North Shore-LIJ Health System

## VI – 3 Compliance With Disability Laws                     Page 4 of 4

**Grievance Procedure**

Any employee may initiate a grievance with the health system if he/she believes that:

1. He/she has been discriminated against because of disability,
2. A request for a reasonable accommodation was improperly denied,
3. Confidential medical information has not been treated as confidential or has otherwise been improperly disclosed, or
4. He/she has been retaliated against for requesting a reasonable accommodation.

Also, see Complaint and Grievance Procedure, Part V- 1.

**Related Policies**

    Part V-1    Complaint and Grievance Procedure
    Part V-2    Confidentiality